UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

LARRY A. BURNS,                                )
                                               )
    Plaintiff                             )
                                               )
v.                                             )   1:10-cv-00124-JAW
                                               )
SOCIAL SECURITY ADMINISTRATION                 )
COMMISSIONER,                                  )
                                               )
    Defendant                             )

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Larry A. Burns has severe impairments consisting of degenerative disk disease in combination with obesity and a collection of mental impairments, but retains the functional capacity to perform a subset of light-exertion work, including specific occupations existing in significant numbers in the national economy. These findings resulted in a denial of Burns's application for supplemental security income benefits under Title XVI of the Social Security Act. Burns commenced this civil action to obtain judicial review of the final administrative decision, alleging errors relating to the evaluation of his mental limitations at steps 4 and 5 of the sequential evaluation process. I recommend that the Court affirm.

## The Administrative Findings

The Commissioner's final decision is the November 17, 2009, decision of Administrative Law Judge John L. Melanson because the Decision Review Board did not complete its review during the time allowed. (Docs. Related to Admin. Process, Doc. No. 8-2, R. 1.[1]) Judge Melanson's decision tracks the familiar five-step sequential evaluation process for analyzing

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 8, captioned "Administrative Record."

social security disability claims. (Id., R. 7-21.)

At step 1 of the sequential evaluation process, the Judge found that Burns has not engaged in substantial gainful activity since July 12, 2007, the amended date of alleged onset of disability, though he has engaged in some work activity since that date. (R. 9, ¶ 1.)

At step 2, the Judge found that certain of Burns's physical impairments, including a foot impairment, gastro-esophageal reflux disorder, hypertension, and hyperlipidemia, are non-severe for purposes of step 2, but that the following severe impairments more than minimally affect Burns's ability to perform basic work-related activities: anxiety disorder, affective disorder, and personality disorder, in combination; obesity; degenerative disk disease of the lumbar spine that is severe when combined with obesity; and substance-induced mood disorder. The Judge further found that the medical evidence of record does not support a diagnosis of any respiratory impairment. (Id., ¶ 2.)

At step 3, the Judge found that this combination of impairments would not meet or equal a listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P. (R. 11-12, ¶ 3.)

As for Burns's physical residual functional capacity (RFC), the Judge found that Burns is able to engage in light exertion work subject to certain postural and environmental restrictions. (R. 12, ¶ 4.) As for Burns's mental RFC, the Judge found that Burns's mental impairments do not prevent him from performing simple, repetitive work and tolerating simple changes in the work setting. (Id.) Additionally, the Judge found that there is a moderate social limitation that precludes interaction with the public, but allows for frequent interaction with coworkers and supervisors. (Id.)

At step 4, the Judge found that this degree of limitation precluded past relevant work as a

flagger. (R. 19, ¶ 5.)

At step 5, relying on vocational expert testimony concerning a hypothetical "younger individual" with the stated RFC, Burns's work experience, and a high school education, the Judge found that Burns could work in other occupations existing in substantial numbers in the national economy, including in the representative occupations of marker, assembler, and cleaner.[2] (R. 19-20, ¶ 9.)

### Discussion of Plaintiff's Statement of Errors

Burns's allegations of error relate exclusively to the Judge's mental RFC findings. Specifically, Burns argues that it was error for the Judge not to find a marked social limitation that would rule out appropriate social interaction in the workplace and any ability to concentrate on work tasks within a social setting. Burns bases his challenge on a mental RFC assessment offered by Nurse Practitioner Robert Magaw. Burns complains that the Judge rejected NP Magaw's assessment without identifying any inconsistencies between NP Magaw's opinion and NP Magaw's treatment notes. Burns also contends that the Judge placed too much weight on the opinion expressed by testifying medical expert Dr. Claiborn. (Statement of Errors at 2-6.) The crux of the dispute is that Dr. Claiborn characterized Burns's social limitations as moderate, whereas NP Magaw characterized them as marked. In Burns's view, the fact that he has repeatedly been brought to book for fighting (read "antisocial behavior") means that he has no vocational capacity to socialize with anyone in a work setting. (Id. at 6-8.)

**A.  Summary of related medical records and testimony**

In September of 2007, David Houston, Ph.D., completed a psychiatric review technique (PRT) and produced a mental RFC assessment on behalf of Disability Determination Services.

---

[2]  The relevant Dictionary of Occupational Titles codes are 209.587-034 (marker), 706.684-022 (assembler), and 323.687-014 (cleaner).

3

(Exs. 10F, 11F, Doc. No. 8-7.) In his PRT form, Dr. Houston assessed moderate limitation in social functioning. In his mental RFC assessment, Dr. Houston assessed an ability to interact with coworkers and supervisors, but not with the general public. (R. 355-56.)

In July of 2008, Acadia Hospital admitted Burns for inpatient care on account of a "cocaine binge" and Burns received a diagnosis of cocaine dependence and withdrawal, including cocaine-induced psychosis and mood disorder.[3] Under Axis II, it was noted that Burns should be considered for possible personality disorder, not otherwise specified. (Ex. 15F, Doc. No. 8-10.) Burns's prognosis was "fair with continued treatment"; his strengths were noted as his voluntary request for substance abuse treatment; and his barriers to treatment were considered to be "none at this time." (R. 538.) During his stay at the hospital, Burns was "able to engage with his inpatient treatment team" and "interacted appropriately with peers and staff." (R. 538; see also R. 541.) A mental status exam indicated a euthymic mood, orientation x3, intact judgment, good insight, and appropriate thought process, though his GAF was scored at 45 on discharge. (R. 537-38.) Acadia's subsequent outpatient treatment notes indicate limited success with substance abuse treatment, including use of crack cocaine and alcohol abuse in February of 2009 and termination from the program in March for lack of attendance. (Ex. 18F, Doc. No. 8-10, R. 591-93.) However, it appears that Burns managed to continue meeting with a clinician for "brief supportive therapy." (R. 593.) During what appears to be a brief period of sobriety in February 2009, with positive medication management, Burns's mood swings reportedly leveled out and his Acadia Hospital social worker regarded him as "fairly reliable." (R. 594.)

Acadia Hospital's discharge instructions were released to Robert Magaw, PMHNP-BC, of

---

[3] The admission note indicates a three-week period of daily crack cocaine ingestion, alcohol abuse, and suicidal ideation with mood decompensation, including feelings of wanting to harm someone. (R. 538, 540.)

4

Bangor Psychiatric Associates. (Ex. 15F, R. 537.) That practice has a relatively extended relationship with Burns, dating to 2007. (Ex. 5F, Doc. No. 8-7; Ex. 12F, Doc. No. 8-8; Ex. 19F, Doc. No. 8-11.) NP Magaw has described Burns as "chronically at risk of assault to others" and the record reflects instances of physical abuse directed at a domestic partner/girlfriend. (See, e.g., Ex. 12F, R. 362; Ex. 19F, R. 644.) NP Magaw has also described a history of aggressive behavior with a "decreasing course." (Ex. 12F, R. 358.) Magaw has educated Burns about the deleterious effects of alcohol abuse and its tendency to undermine the effectiveness of prescribed medications. (R. 362.) A progress note from August 2009 relates that alcohol abuse was reportedly in remission. (Ex. 19F, R. 610.) A note from September 2009 indicates that Burns denied continued cocaine abuse, though Magaw ordered a urine lab to confirm this report. (R. 612.) As for aggressive behavior, Magaw repeatedly inserted the following language in his progress notes:

> Aggressive behaviors is described as the following:
> The onset of the aggressive behaviors has been gradual and has been occurring in an intermittent pattern for years. The course has been improving. The aggressive behaviors is described as severe. Aggressive behaviors notes: interferes with work, relationships, has spent time in jail for assaults.

(See, e.g., Ex. 19F, R. 610, 614, 618, 622, 626, 630, 634, 638, 642, 646-47, 650, 654.)

On October 25, 2009, NP Magaw completed a mental RFC assessment on behalf of Burns. (Ex. 24F, Doc. No. 8-12.) Based on Burns's long history of Post Traumatic Stress Disorder, rapid mood fluctuations, and a long substance abuse history, in remission, NP Magaw assessed that Burns would be unable to meet competitive standards associated with unskilled work because, among other things, Burns could not work in coordination with or proximity to others without being unduly distracted from his work. (R. 787.)

At Burns's administrative hearing, the Judge called for an assessment from Dr. James

5

Claiborn. The Judge asked Dr. Claiborn to consider whether Dr. Houston's mental RFC assessment was still supported by the entire evidentiary record notwithstanding Burns's subsequent crack cocaine binge and related course of treatment. (Hr'g Transcript, Doc. No. 8-2, R. 58.) Dr. Claiborn responded in the affirmative. (Id.) At this point the Judge allowed plaintiff's counsel to question Dr. Claiborn. Counsel described an alleged "19 arrests for assault" and asked whether that would suggest marked, rather than moderate, impairment. (R. 58-59.) Dr. Claiborn was unwilling to unqualifiedly agree with this assumption. Dr. Claiborn considered Burns rather capable socially, but he allowed that past episodes of misconduct, including a report of altercations in the workplace, were "problematic." Still, Dr. Claiborn opined that this record did not necessarily represent inability to function socially for vocational purposes. (R. 59-60.) Dr. Claiborn opined that the case history demonstrated an individual with sufficient skill to get what he regarded as important at different times in his life, though it also demonstrated a consistent disregard for the rights of others, supporting the diagnosis of personality disorder. (R. 62-63.)

More significantly, in Burns's view, Dr. Claiborn allowed that it "may be a reasonable conclusion" to state that Burns cannot meet competitive standards when it comes to working in coordination with or proximity to others without being unduly distracted. (R. 65.) At this point in Dr. Claiborn's testimony, the Judge cut in, asking what role substance abuse played in NP Magaw's assessment. (Id.) Counsel argued that substance abuse was immaterial to NP Magaw's opinion, because Magaw wrote "in remission" on the mental RFC form. (Id.) Dr. Claiborn testified that trying to assess social functioning in the absence of substance abuse, based on NP Magaw's notes, would be "very hard" given the extent of overlap between assaultive behavior and drug abuse, particularly in light of NP Magaw's routine description of Burns upon physical

6

examination as cooperative and pleasant, with appropriate affect, logical thought, intact judgment, and only moderate-to-mildly depressed and anxious mood. (R. 66; see, *e.g.*, Ex. 19F, R. 611, 615, 619.) Upon further questioning by the Judge, Dr. Claiborn stated that the repetitive nature of much of the content in NP Magaw's progress notes was unhelpful in this regard and that he did not feel there would be a reliable basis to say that aggression toward co-workers would be a problem in the absence of substance abuse, "which is certainly likely to substantially aggravate acting in that way." (R. 69.) Shortly before the end of his testimony, Dr. Claiborn volunteered:

> [I]f we think of behaviors as voluntary choices, people may make choices to do things that we consider inappropriate but have the capacity to control or maintain their behavior and act in an appropriate way if they choose to. And it is my opinion that in his particular case that that capability exists and has not been exercised.

(R. 71.)

**B.     Analysis**

Preliminary to evaluation of the claimant's alleged disability at steps 4 and 5, the Commissioner must assess the claimant's residual functional capacity (RFC). RFC amounts to "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The measure of a claimant's RFC is a function of "all of [the] medically determinable impairments of which [the Commissioner is] aware," including those found not sufficiently severe for purposes of steps 2 and 3. Id. §§ 404.1545(a)(2), 416.945(a)(2). In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. §§ 404.1545(a)(3), 416.945(a)(3).

7

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The [administrative law judge]'s findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). Barring such missteps, "the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts." Rodriguez, 647 F.2d at 222.

Burns argues that Dr. Claiborn's testimony cannot be reconciled with the Commissioner's regulatory approach to the issue, which describes a history of altercations as material to one's capacity to "interact appropriately, effectively, and on a sustained basis" with others. Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 12.00(C)(2). According to Burns, Dr. Claiborn's refusal to characterize a history of aggression toward others as a marked social limitation precluding interactions in the work place was unreasonable and cannot supply substantial evidence in support of the Judge's finding of only moderate impairment. (Statement of Errors at 9-10.) Burns also contends that a close reading of Dr. Claiborn's testimony demonstrates that Dr. Claiborn actually agrees that Burns would not be able to concentrate on work tasks when working in coordination with or proximity to others. (Id. at 10, citing R. 65.) Burns says the Judge needed to articulate a reason for disregarding this opinion and that his failure to do so was error because it undermined the RFC hypothetical the Judge posed to the

8

vocational expert for purposes of step 5. (Id. at 10-11.)

The Judge based his RFC finding on a collection of factors, including the longitudinal record, Dr. Claiborn's hearing testimony, Dr. Houston's mental RFC assessment, and credibility assessments about Burns's allegations. As for credibility, the Judge regarded Burns as making a concerted effort to maximize his chances of success on his disability application, including advancing his case for a marked social limitation by adopting a homeless lifestyle two weeks prior to the hearing, ostensibly because his previously long-suffering girlfriend finally threw him out.[4] (R. 17.) But more to the point, the Judge concluded that Dr. Claiborn's assessment of social capacity was more reliable and deserving of weight than NP Magaw's. The Judge explained that his own assessment of Burns's social behavior correlated with the explanation provided by Dr. Claiborn; that Burns's aggressive behavior has demonstrated "operant behavior" indicative of a moderate rather than marked social limitation. (R. 18.) The Judge also relied on Dr. Houston's mental RFC, which he regarded as persuasive despite the intervening "cocaine binge" and course of related treatment. (Id.) This decision is supported by Dr. Claiborn's testimony that Dr. Houston's assessment remained persuasive. As for NP Magaw, the Judge explained that he considered the testimony of Dr. Claiborn, a psychologist, to be more persuasive than the NP's views, particularly in light of what the Judge regarded as Dr. Claiborn's "compelling presentation as to the nature and degree of the claimant's limitations." (Id.) The Judge also indicated that he found NP Magaw's progress notes "generally unilluminative, with mere reiterations of earlier treatment notes, and few, if any, notes on progress or responses to treatment modalities, which detracts greatly from their probative value and reliability." (Id.)

Burns argues that the Judge unfairly panned NP Magaw's progress notes as overly

---

[4] It was observed at hearing that Burns's parents refused to take him in, though they continued to provide him with cash to sustain himself and provided him with a truck in which he reported living.

redundant. He identifies different narratives found under the "Assessment and Chosen Plan of Action" headings in the progress notes. Two exemplars selected by Burns show his desire for a benzodiazepine prescription, NP Magaw's reluctance to prescribe these substances unless Burns abstained from alcohol and illicit drugs, and, after Burns's acquisition of a one milligram Klonopin (benzodiazepine) prescription from Acadia Hospital, reluctant continuance of that prescription based on Burns's report of a palliative effect and subject to urinalysis testing. (Statement of Errors at 3-4, citing R. 636, 668.) Burns is correct that NP Magaw's progress notes are not cut and paste jobs, but this does not deflect the point that there is a substantial amount of redundancy, including in relation to the characterization of aggressive behavior. Nor does it deflect the point that the notes do not shed a lot of light on Burns's month-to-month progress or his underlying ability to function in a work setting, however dysfunctional or dis-enabling Burns's home life may be.

To be sure, there is room for debate about the degree to which this record demonstrates social limitations or concentration, persistence, and pace limitations associated with the social limitations. Many of the notes in the record reference a history of aggressive conduct and criminal conduct, but references to contemporaneous violence are limited to occasional domestic abuse. To my knowledge, there is no rule of law that calls for a finding of marked mental limitations when a claimant has a criminal history or other history of aggressive behavior or domestic violence. Burns essentially argues that these are the practical implications of his history. However, two medical experts agree with the Judge that Burns's presentation does not prove a social limitation severe enough to preclude working productively in coordination with or in proximity to others. This is substantial evidence in support of the Judge's finding because reasonable individuals might well agree (a) that Burns's testimony and NP Magaw's assessment

do not establish that Burns is incapable of behaving appropriately in the work setting and (b) that Burns likely can do so if he applies the same determination toward that activity that he has previously applied toward acquiring crack cocaine and living off the support of others. In the end, Dr. Claiborn's allowance that others (such as NP Magaw) might reasonably predict failure is not the kind of concession that renders insubstantial Dr. Claiborn's contrary opinion. While it may, paradoxically, come as a disappointment to Burns that his medical records do not compel a finding of incapacity to work with others, this positive assessment is one reasonable conclusion of what the entire record divulges.

## Conclusion

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court AFFIRM the Commissioner's final decision and enter judgment in favor of the Commissioner.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

April 8, 2011